## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

WILDEARTH GUARDIANS,

        Plaintiff,

    v.

LISA JACKSON, in her official capacity as
Administrator of the Environmental Protection Agency,

        Defendant.

---

## COMPLAINT

---

## I.    Introduction

1.    Under the theory of "cooperative federalism" guiding the implementation of the Clean Air Act, 42 U.S.C. §§ 7401-7671q, individual states are allowed to develop State Implementation Plans ("SIPs") to comply with National Ambient Air Quality Standards ("NAAQS") promulgated by the Federal government through the Environmental Protection Agency ("EPA").  See 42 U.S.C. § 7410.  States must submit their SIPs to EPA for approval.  EPA reviews each SIP to ensure it meets the minimum requirements of the Clean Air Act ("CAA").  If the SIP meets the requirements of the Act, EPA must approve it.  Alternatively, if the SIP does not meet the minimum requirements of the Act, EPA must disapprove the SIP.  Id.

2.      An approved SIP remains open to modification as necessary.  EPA must initiate rulemaking proceedings to call for a SIP revision whenever it finds that a previously approved SIP has become inadequate or otherwise fails to meet the current requirements of the Clean Air Act.  42 U.S.C. § 7410(k)(5)

3.      The State of Utah's SIP contains a provision that allows regulated facilities to exceed air pollution emission limits, including those designed to protect human health, during "breakdowns" (hereinafter the "breakdown exemption").  This provision is inconsistent with the Clean Air Act, which does not allow automatic exemption of compliance with emission limits during breakdowns, malfunctions, or any other similar event.  By automatically allowing sources of air pollution to exceed emission limits during "breakdowns," Utah's breakdown exemption is contrary to the requirements of the Act.

4.      Seven years ago, in 2002, and at various times since then, EPA has found that Utah's breakdown exemption is inconsistent with the Clean Air Act and told the State to fix it.  Utah promised to "work with" EPA to revise its breakdown exemption. However, nothing has happened.  Utah has not fixed its breakdown exemption and EPA has not required it to do so.  Tired of the continual foot-dragging by Utah and by EPA's lack of will to enforce the law, on December 31, 2007, Plaintiff filed a petition, pursuant to the Administrative Procedure Act, 5 U.S.C. § 553(e), and the Clean Air Act, 42 U.S.C. § 7410(k)(5), requesting EPA to issue a rule requiring Utah to revise its breakdown exemption.  Now, nearly two years later, faced with EPA's refusal to take any action on its Petition, and after providing over 180 days notice to EPA of its intent to sue, Plaintiff is forced to file the instant lawsuit to prompt a response to its Petition.

## II.     Jurisdiction, Venue, and Notice

5.      This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 7604(a) (citizen suit provision of the CAA), 5 U.S.C. § 706 (Administrative Procedure Act), 28 U.S.C. § 2201 (declaratory judgment); 28 U.S.C. § 2202 (injunctive relief); 28 U.S.C. § 1346 (U.S. as a defendant), 42 U.S.C. § 7604(d) (costs and attorney fees provision of the CAA), and/or 28 U.S.C. §§ 2412 *et seq*. (Equal Access to Justice Act).

6.      Venue is proper in this judicial district pursuant to 42 U.S.C. § 7604(a) because the U.S. District Court for the District of Colorado is a U.S. District Court within the Tenth Circuit, the circuit in which Utah's SIP approval would be reviewable under 42 U.S.C. § 7607(b); and pursuant to 28 U.S.C. §§ 1391(e)(1), (2), & (3) because Defendant (the "Administrator") maintains a Regional EPA Office responsible for reviewing Utah's SIP, and Plaintiff's Petition, in Denver, Colorado; because a substantial part of events or omissions giving rise to the claims in this Complaint occurred in Denver, Colorado; and because Plaintiff maintains an office, responsible for drafting the Petition, in Denver, Colorado.

7.      On December 22, 2008, after waiting a year for a ruling on its Petition, Plaintiff wrote the Administrator and provided formal notice of its intent to sue on the claims alleged in this Complaint.  EPA informed Plaintiff that it received this notice letter on January 5, 2009.  Accordingly, Plaintiff properly gave Defendant notice of the violations alleged in this Complaint and of Plaintiff's intent to bring suit to remedy these violations more than 180 days prior to the filing of this Complaint.  See 42 U.S.C. § 7604(a)(2).  To date, the Administrator has neither granted nor denied Plaintiff's Petition.

### III.    Parties

8.      Plaintiff, WILDEARTH GUARDIANS, is a non-profit conservation organization with offices in Santa Fe, New Mexico and Denver, Colorado.  It brings suit on its own behalf and on behalf of its members.  WildEarth Guardians ("Guardians") is the successor in interest, via a merger, of Rocky Mountain Clean Air Action, the original petitioner.  Guardians and its members work to reduce harmful air pollution in order to safeguard public health, welfare, and the environment.  Guardians has approximately 10,000 members and supporters, many of whom live, work and/or recreate in Utah.

9.      Guardians' members who live, work, recreate, and conduct other activities in Utah are effected by air quality and have a substantial interest in ensuring they breath the cleanest air possible.  Guardians and its members also have a substantial interest in ensuring that EPA complies with the Clean Air Act and that it responds to citizen petitions.  Guardians invested time and money in preparing the Petition and is harmed by EPA's failure to respond to it.  Because EPA has not responded to Guardians' Petition, Guardians' members are exposed to excess air pollution emitted by facilities in Utah during "breakdowns."  Guardians' and its members' interests have been, are being, and will continue to be irreparably harmed by EPA's failure to act on Guardians' Petition to revise Utah's SIP provisions allowing excess air pollution during breakdowns.  The relief requested in this lawsuit would redress the injuries of Guardians' and its members.

10.     Defendant, LISA JACKSON, is the Administrator of the Environmental Protection Agency.  She is sued in her official capacity.  The Administrator is the federal official ultimately responsible for the implementation of the Clean Air Act.  EPA maintains a Regional Office, responsible for its activities in Utah, in Denver, Colorado.

IV.     **Legal Framework**

A.     **The Clean Air Act**

11.     The Clean Air Act provides that whenever the Administrator finds that a SIP fails comply with any requirement of the Act, the Administrator shall require the State to revise its SIP as necessary to correct such inadequacies.  42 U.S.C. § 7610(k)(5). The Administrator shall publicly notify the State of the inadequacies and may establish a reasonable deadline of up to 18 months for the State to submit a revised SIP.  Id.

12.     The Clean Air Act further provides that any person may commence a civil action against the Administrator when the Administrator fails to perform any non-discretionary act or duty.  42 U.S.C. § 7604(a)(2).

13.     Additionally, the Clean Air Act provides the district courts of the United States have jurisdiction to compel unreasonably delayed agency action.  42 U.S.C. § 7604(a).

B.     **The Administrative Procedure Act**

14.     The Administrative Procedure Act ("APA") requires each agency "shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).

15.     The APA further requires that any agency, such as EPA, shall " within a reasonable time" "proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

16.     The APA further provides for judicial review, 5 U.S.C. § 702, and requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

## V.    Factual Allegations

17.    EPA has approved a SIP for the State of Utah.

18.    The "breakdown exemption" in the Utah SIP contains six sections that allow facilities to exceed air pollution emission limits in the event of a normal breakdown.  A normal breakdown is defined in Utah Regulation R307-101-2 as "any malfunction or procedural error, to include but not limited to any malfunction or procedural error during start-up and shutdown, which will result in the inoperability or sudden loss of performance of the control equipment or process equipment causing emissions in excess of those allowed by approval order or Title R307."

19.    The breakdown exemption also allows a facility to exceed air pollution emission limits in the event of an "unavoidable" breakdown.  Unavoidable breakdowns are not defined in the Utah regulations.

20.    The breakdown exemption begins by stating that all excess emissions during unavoidable breakdowns do not constitute violations of Utah's air quality regulations.  Utah Regulation R307-107-1 specifically states:

> R307-107 applies to all regulated pollutants including those for which there are National Ambient Air Quality Standards.  Except as otherwise provided in R307-107, emissions resulting from an unavoidable breakdown will not be deemed a violation of these regulations.  If excess emissions are predictable, they must be authorized under the variance procedure in R307-102-4.  Breakdowns that are caused entirely or in part by poor maintenance, careless operation, or any other preventable upset condition or preventable equipment breakdown shall not be considered unavoidable breakdown.

21.    The breakdown exemption goes on to state that even normal breakdowns are allowed to exceed air pollution emission limits, provided the breakdown does not last for more than two hours.  See Utah Regulation R307-107-2.  A violation of this section

will only occur when breakdowns lasting for more than two hours are not reported.  <u>See</u> <u>id</u>. at 107-3.

22.     Utah's Regulations attempt to provide limits on the application of the unavoidable breakdown exemption.  Utah Regulation R307-107-4 states:

> The owner or operator of an installation suffering an unavoidable breakdown shall assure that emission limitations and visible emission limitations are exceeded for only as short a period of time as reasonable.  The owner or operator shall take all reasonable measures which may include but are not limited to the immediate curtailment of production, operations, or other activities at all installations of the source if necessary to limit the total aggregate emissions from the source [...] In the event that production, operations, or activities cannot be curtailed so as to limit the total aggregate emissions without jeopardizing equipment or safety or measures taken would result in even greater excess emissions, the owner or operator of the source shall use the most rapid, reasonable procedure to reduce emissions.

23.     A violation of Section 107-4 will only occur when the owner or operator of an installation fails to comply with the curtailment actions required by this section. <u>See</u> <u>id</u>. at 107-5.

24.     Considered in its entirety, Utah's breakdown exemption serves to allow polluters to use breakdowns, unavoidable or otherwise, as a means to avoid compliance with Utah's air quality regulations.

25.     Nothing in the federal Clean Air Act provides for the automatic exemption of compliance during breakdowns, malfunctions, or any similar event.  There are no provisions for "unavoidable breakdowns" anywhere in the CAA or its 1990 amendments. The CAA requires that SIPs ensure absolute compliance with national ambient air quality standards ("NAAQS") and prevention of significant deterioration ("PSD") provisions. <u>See</u> 42 U.S.C. §§ 7407(a) and 7410(a)(1).

26.     In 1978, EPA adopted an excess emissions policy, which considers all periods of excess emissions to be violations of the CAA.  In subsequent EPA policy statements, CAA interpretations, guidance documents, and administrative rules and orders, EPA has consistently and clearly reaffirmed this position.

27.     EPA has also stated that automatic exemptions will not be allowed.  An affirmative defense may be permitted only with respect to penalties, not to injunctive relief, and only when no single source or small group of sources has the potential to cause exceedance of NAAQS or PSD requirements and when there is no violation of a federally promulgated performance standard or emission limitation.  In those cases, a state director must exercise his or her enforcement discretion and cannot avoid this case-by-case obligation by allowing an automatic exemption.

28.     EPA's policy of identifying all excess emissions as CAA violations and its disallowance of automatic exemptions is consistent with the CAA.  SIPs protect ambient air quality based standards.  Emissions above the allowable limits may cause or contribute to violations of the NAAQS and are therefore illegal and inexcusable.  EPA has determined that if there are circumstances preventing sources from complying with SIPs during breakdowns, then the State must address these problems in the underlying rules applicable to those particular sources and not through overarching excess emission provisions.  The CAA does not allow for automatic exemptions from compliance with applicable SIP emission limits during periods or start-up, shutdown, malfunctions or upsets.  Breakdowns typically result from equipment failure or improper maintenance and can result in excess emissions.  EPA has stated that it has a fundamental responsibility under the CAA to ensure that SIPs provide for attainment and maintenance of the

NAAQS and protection of PSD increments.  Accordingly, a breakdown exemption that would undermine the fundamental requirement of attainment and maintenance of the NAAQS or any other requirement of the CAA is illegal.

29.     On several occasions, EPA has found and publicly stated that Utah's breakdown exemption violates the Clean Air Act.

30.     EPA has urged Utah to revise its SIP to correct the breakdown exemption since at least 2002.  In 2002, Utah committed to revising the breakdown exemption. Despite attempts, since 2002, Utah has yet to revise its breakdown exemption.

31.     In an October 22, 2004 letter to Rick Sprott, Director of the Utah Division of Air Quality, EPA Region 8 Director of the Air and Radiation Program, Richard Long, stated: "We appreciate your efforts to develop a rule to address concerns we have previously raised with the state's 'Unavoidable Breakdown' rule.  Unfortunately, our preliminary review of the proposed rule indicates that it is not approvable as a state implementation plan (SIP) revision."

32.     In December, 2004, comments on a proposed air pollution permit for a power plant in Utah County, Utah, EPA stated: "Utah has been advised on a number of occasions that the unavoidable breakdown rule is not consistent with EPA interpretation of the Clean Air Act."  EPA's December, 2004 letter further recognized that Utah had committed to work to address EPA's concerns with its breakdown exemption through a SIP revision, but that Utah had not yet done so.

33.     Similarly, in August, 2006, EPA commented on a proposed permit for a cement plant in Morgan County, Utah stating: "Utah has been advised on a number of occasions that the unavoidable breakdown rule is not consistent with EPA's interpretation

of the Clean Air Act and that the rule should not be referenced in Utah's permits.  Also, under EPA's interpretation of the Clean Air Act, PSD BACT [best available control technology] limits apply at all times.  PSD BACT emission limits in the permit cannot be subject to this or any other exemption."

34.    EPA has found that Utah's breakdown exemption in the State's SIP is inconsistent with the Clean Air Act.

35.    EPA has publicly stated in various letters to Utah air quality officials responsible for Utah's SIP that Utah's breakdown exemption is inconsistent with the Clean Air Act.

36.    EPA has yet to issue a SIP call under 42 U.S.C. § 7410(k)(5) requiring Utah to revise its SIP to make its breakdown exemption consistent with the Clean Air Act.

37.    On December 31, 2007, Rocky Mountain Clean Air Action, now Plaintiff, WildEarth Guardians, submitted a Petition to Require Revision of the Utah SIP Provisions on Excess Emissions During Breakdowns.  Guardians specifically requested that EPA require elimination of the breakdown exemption and/or require revision of the Utah SIP to meet the requirements of the CAA.  Guardians further pointed to Colorado's breakdown rule as an acceptable model to revise Utah's breakdown exemption.

38.    As of the filing of this Complaint, EPA has not responded to Guardians' Petition.

**VI.     Claims for Relief**

Guardians brings the following three claims for relief in the alternative.

**A.     First Claim for Relief:  CAA - Violation of a Non-Discretionary Duty**

39.     Plaintiff incorporations all preceding allegations in this Complaint by reference.

40.     42 U.S.C. § 7410(k)(5) provides whenever the Administrator finds that a SIP fails to comply with any requirement of the Clean Air Act, the Administrator shall require the State to revise the SIP as necessary to correct such inadequacies.  The Administrator shall notify the State of the inadequacies in its SIP and may establish reasonable deadlines, not to exceed 18 months, for the State to submit the required SIP revisions.  Id.  Such finding and notice shall be public.  Id.

41.     EPA has found Utah's breakdown exemption fails to comply with the requirements of the Clean Air Act.  EPA has notified Utah of this inadequacy.  Both EPA's finding and notification to Utah have been repeated publicly in various letters to the responsible Utah air quality officials.  However, despite making such a finding and publicly notifying Utah of the inadequacy in its SIP, EPA has failed to require Utah to correct the inadequacy and has not established reasonable deadlines, not to exceed 18 months, for Utah to submit the required SIP revision.

42.     EPA's failure to require Utah to revise its SIP to remove or amend its breakdown exemption in compliance with the Clean Air Act violates 42 U.S.C. § 7410(k)(5).  EPA's violation of CAA Section 7410(k)(5) is a failure by the Administrator to perform an act or duty, which is not discretionary in violation of 42 U.S.C. § 7604(a)(2).

**B.      Second Claim for Relief:  CAA – Unreasonable Delay**

43.      Plaintiff incorporations all preceding allegations in this Complaint by reference.

44.      42 U.S.C. § 7604(a) provides the district courts of the United States shall have jurisdiction to compel agency action unreasonably delayed after a Plaintiff has provided the Administrator with 180 days notice before commencing such action.

45.      Guardians petitioned the Administrator to require Utah to revise or remove its breakdown exemption consistent with 42 U.S.C. § 7410(k)(5) nearly two years ago. Guardians provided the Administrator with more than 180 days notice of this violation of the Clean Air Act.  The Administrator has unreasonably delayed ruling on Guardians' petition within the meaning of 42 U.S.C. § 7604(a).

**C.      Third Claim for Relief:  APA – Unreasonable Delay**

46.      Plaintiff incorporates all preceding allegations in this Complaint by reference.

47.      Pursuant to 5 U.S.C. § 553(e), Guardians petitioned EPA to require elimination and/or revision of the Utah SIP provision allowing excess emissions during breakdowns.

48.      EPA has a duty to conclude matters presented to it within a reasonable time, pursuant to 5 U.S.C. §§ 555(b) and 706(1).

49.      EPA has unreasonably delayed responding to and concluding its action on Guardians' Petition within the meaning of 5 U.S.C. §§ 555(b) and 706(1).

## VII.   Request for Relief

WHEREFORE, Plaintiff, WildEarth Guardians requests that this Court enter judgment providing the following relief:

A.    A declaration that by failing to require Utah to revise its SIP to remove or amend its breakdown exemption consistent with 42 U.S.C. § 7410(k)(5), the Administrator has failed to perform an act or duty which its not discretionary under 42 U.S.C. § 7604(a)(2);

B.    An injunction ordering the Administrator to require Utah to submit a SIP revision removing or amending its breakdown exemption by a reasonable deadline, not to exceed 18 months, consistent with 42 U.S.C. § 7410(k)(5);

C.    A declaration that by failing to rule on Guardians' Petition the Administrator has unreasonably delayed agency action under the Clean Air Act, 42 U.S.C. § 7604(a);

D.    An injunction ordering the Administrator to rule on Guardians' Petition within 60 days of the Court's determination that the Administrator's delay is unreasonable;

E.    A declaration that the Administrator's failure to rule on Guardians' Petition constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of the Administrative Procedure Act, 5 U.S.C. §§ 555(b) and 706(1);

F.    An injunction ordering the Administrator to rule on Guardians' Petition within 60 days of the Court's determination that the Administrator's delay is unreasonable;

G.    An order retaining jurisdiction over this matter until such time as the Administrator has complied with the Court's Orders;

H.    An order awarding Guardians' its costs of litigation, including reasonable attorney's fees; and

I.    Such other and further relief as the Court deems just and proper.

Respectfully submitted this 3rd day of September 2009.

s/ James J. Tutchton
WildEarth Guardians
1536 Wynkoop St., Suite 301
Denver, CO  80202
Tel: (720) 301-3843
jtutchton@wildearthguardians.org

*Of Counsel*
Samantha Ruscavage Barz
17 Orno Creek Road
Placitas, NM 87043
Tel: (505) 750-1598
Samantha.RuscavageBarz@gmail.com

*Attorneys for Plaintiff WildEarth Guardians*